UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>vs.<br><br>GARY HECKEL,<br><br>                  Defendant. | 5:22-CR-50141-JLV<br><br><br>ORDER FOR DETENTION |

       This matter came before the court for an initial appearance and arraignment on an Indictment in the above case on Thursday, August 18, 2022. A detention hearing was held wherein one witness testified and the court took the matter under advisement. The defendant Gary Heckel appeared in person and by his counsel, Assistant Federal Public Defender, Ellie Bastian. The United States appeared by Assistant United States Attorney, Heather Sazama.

       In accordance with the Bail Reform Act, 18 U.S.C. § 3142, a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

### Part I - Written Statement of Reasons for Detention

       I find that the credible testimony and information submitted at the hearing establishes that the defendant is charged in the Indictment with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

       The defendant is charged with a federal offense involving minor victims in

violation of 18 U.S.C. § 2252A(a)(2)(A). Therefore, a statutory rebuttable presumption in favor of detention arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e).

In a presumption case such as this, "a defendant bears a limited burden of production-not a burden of persuasion-to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." Id. (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir.2001)). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor" to be considered by the court. Id.

No argument has been made by the Government that there is a serious risk that Defendant will flee. Thus, the Court will only consider the issue of whether Defendant is a danger to the community.

Based on the information contained in the pretrial services report and evidence presented at the detention hearing, including the testimony of Investigator Fagerland,[1] I find by a preponderance of the evidence that there is no condition or combination of conditions of release that will the safety of other persons in the community from similar offenses.

Even assuming *arguendo* that Defendant has produced some evidence tending to demonstrate that he is not a danger to the community or that certain conditions of release will reduce that danger, the Court finds that the Government has met its burden in showing that Defendant is a danger to the community and that no

---

[1] Jessie Fagerland, employed by the Pennington County Sheriff's Office, is an Investigator on the South Dakota Internet Crimes Against Children Task Force. The court finds Investigator Fagerland to be a credible witness.

conditions of release will reasonably assure the community's safety.

In reaching these decisions, I have considered:

(1)    the nature and circumstances of the offense charged;
(2)    the weight of the evidence against the defendant;

(3)    the defendant's history and personal characteristics,

(4)    the nature and seriousness of the danger posed to other persons in the community if defendant were to be released; and

(5)    the rebuttable presumption against release of the defendant under 18 U.S.C. § 3142(e) because the defendant is charged with an offense involving a minor victim in violation of 18 U.S.C. §§ 2252A(a)(2)(A).

**1. Nature and Circumstances of the Offense Charged**

The Defendant is charged with one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), which has a maximum possible penalty of 10 years of imprisonment and/or a $250,000 fine, and one count of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), which has a mandatory minimum of five years imprisonment and a maximum possible penalty of up to twenty years imprisonment and/or a $250,000 fine.

Defendant is charged with crimes involving minor victims, as "child pornography is nothing more than pictorial evidence of crimes against children." United States v. Davin, No. 12-10141-EFM, 2012 WL 2359419, at *3. Congress, by including the crimes involving minor victims in the statutory language of § 3142(g), has shown that it considers the crimes Defendant has been charged with to be significant in terms of dangerousness. The receipt and possession of child pornography is serious enough to be included with other crimes of violence in the statutory language.

Investigator Fagerland testified to the violent nature of the child pornography, including videos where a dead approximately four-year-old child, covered in blood, was being raped by an adult and many other videos in which bestiality, bondage, and torture

was used on children and infants as young as a one-year-old. Fagerland testified that this behavior creates a market for live children. Further, Fagerland testified that Defendant's collection of child pornography consists of over 75,000 files.

Although, Defendant has not been charged with distributing child pornography, Mr. Heckle admitted to Investigator Fagerland that he had not only been downloading child pornography, but also distributing and trading links for child pornography. This indicates that Defendant was more than a mere observer in the child pornography world and instead was an active player. The first factor weighs in favor of detention.

## 2. Weight of the Evidence

The evidence against Heckel is substantial and strongly favors pretrial detention. Investigator Fagerland testified that South Dakota Internet Crimes Against Children Task Force received a Cyber tip that contained a Drobox Account with two files with child pornography. The Cyber Tip also contained an IP address that related to DropBox Account. Fagerland stated that he obtained a subpoena for information regarding the IP address, and it came back to Grey Heckel's address on Alta Vista Drive. Fagerland then obtained a search warrant to view the contents of the DropBox. Additional photos and videos were found in the DropBox. Then Fagerland obtained a warrant to search Heckel's residence and to seize approximately fifteen other items, including multiple devices.

Investigator Fagerland testified that Heckle admitted to him that he had in fact been downloading child pornography, and he had also been distributing and trading links for child pornography. The evidence is strong not only because Defendant confession, but also because the evidence showed the Defendant possessed thousands of images and videos of graphic and extremely violent child pornography. Given the weight of the evidence, which Defendant has essentially not disputed for purposes of

4

this hearing, the inference of danger to the community is strengthened, and also weighs in favor of pretrial detention.

### 3. Defendant's History and Characteristics

The court is to consider the defendant's history and personal characteristics, including the defendant's character, physical and mental condition, history of alcohol and illegal substance abuse, family ties, employment, financial resources, length of residence in this community, community ties, past conduct, criminal history, as well as court appearance record. 18 U.S.C. § 3142(g)(3)(A).

Defendant is a 71-year-old United States citizen. Defendant has ties to the community as he has lived here for approximately the last 2 years, where he owns a home and resides with his wife of approximately 11 years. Defendant has no significant alcohol or illegal substance abuse. Defendant is retired after years of owning his own business.

Defendant has no criminal history, a factor that would generally weigh in favor of release; however, "given the difficulty in detecting those involved in child pornography crimes, it is not uncommon for defendants charged with such crimes to present with a lack of prior criminal history." United States v. Edwards, No. 22-10043-JWB, 2022 WL 2952550, at * 3 (D. Kan. July 26, 2022). Thus, this factor is neutral.

### 4. Nature and Seriousness of the Danger Posed to the Community

Finally, the court is to consider the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. "The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety to the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Kroeker, No. 22-3092, 2022 WL 2610344, at *4 (10th Cir. July 8, 2022) (affirming detention in a case

involving two counts of receiving and possessing child pornography) (quoting United States v. Cook, 880 F.2d 1158, 1161 (10th Cir. 1989)).

This court heard the case of Javier Moreno in which the defendant was charged with receipt and possession of child pornography and was detained pretrial. United States v. Javier Moreno, 5:21-cr-50084-JLV (D.S.D 2022). At Moreno's detention hearing, Agent Jessie Fagerland received a two cybertips regarding 40 images or videos of violent child pornography, including a one-year-old child being anally raped. This tip led to a search warrant which produced thousands of images and videos of child pornography. Moreno admitted to downloading and viewing child pornography. Moreno also admitted to repeatedly raping his sister at a young age and touching a 10 year old girl inappropriately while working for the Salvation Army. Moreno said that no disciplinary action came from the inappropriate actions that occurred within the Salvation Army nor his conduct while he was a minor. That is the major difference between this case and Moreno; Moreno admitted to hands on offenses; whereas, Heckle did not admit to any hands on offense. Moreno was detained pretrial because of the severe nature of the charge and the danger to the community. The Court held the fact that the child pornography contained many videos and pictures of infants weigh favor in favor of detention.

The Government asserts that Heckler's child pornography collection far exceeds the number and the violence found in Moreno's files. Heckler's child pornography collection, similar to Moreno's files, indicate addictive behavior. Evidence at the detention hearing showed that both defendants had tens of thousands of violent pictures and videos of child pornography. Both of these child pornography collections

are some the worst child pornography collections that this court has seen. [2]

In a similar case, Bivins was charged with distribution and possession of child pornography. United States v. Bivins, Cr. A. No. 7:11–cr–19(HL), 2011 WL 2182239, at *3 (M.D. Ga. June 3, 2011). The court, in weighing his dangerousness to the community, held that if Bivins was released and he reoffended, "his conduct would further the exploitation of children in the child pornography market or would cause a child or children to suffer devastating consequences." Id. at 3.

Similarly, Congress has determined that the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." U.S. v. Galvan, No. 3:20-cr-00019, 2020 WL 4604502, at *6 (S.D. Tex. Aug. 11, 2020) (quoting Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, 110 Stat. at 3009–27 (codified at 18 U.S.C. § 2551); Davin, No. 12-10141-EFM, 2012 WL 2359419, at *3.

When "children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Id.; see also New York v. Ferber, 458 U.S. 747, 760 n.10 (1982) (discussing the long-term psychological, emotional, and mental difficulties of children who have been sexually exploited: "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.... It is the fear of exposure

---

[2] At sentencing, Judge Viken said that Moreno's child pornography collection was the most voluminous and violent that he has ever seen.

and the tension of keeping the act a secret that seem to have the most profound emotional repercussions." (internal citations omitted)).

Government argued that regardless of whether Mr. Heckle was an active participate in the creation of the videos "media consumption creates a market for the abuse, torture, and possible murder of children."  The court agrees.  Although Mr. Heckle did not have any charges or past known history for physical conduct with minors, his actions "create a market for live children."  Heckle had very violent forms of child pornography including raping a dead child.  This horrific form of child pornography presented a serious danger to the community.  If Heckel was to get released and reoffended, this conduct, similar to in Bivins, "would further the exploitation of children in the child pornography market or would cause a child or children to suffer devastating consequences."  Bivins, Cr. A. No. 7:11–cr–19(HL), 2011 WL 2182239.  Due to the addition that Heckel faces, evidenced by the tens of thousands of files he possessed, there is a serious risk that Heckle may reoffend if granted pretrial release.  Protecting the public, specifically children, from Heckle's possible future actions is of grave importance to this court.  Thus, this factor weighs in favor of detention.

### Part II - No Condition or Combination of Conditions Will Reasonably Assure the Safety of Any Other Person or the Community

The court finds Defendant has failed to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of any other person or the community.  But even if he were able to rebut the presumption, the court finds the record establishes by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety any other person or the community.

In reaching its decision, the court has carefully considered whether there are any conditions of release that could reasonably ensure the safety of the community, given the crimes with which Defendant is charged.

Although Defendant proposes that he return home to live with his wife and will not have internet access, "the internet is easily accessible by a multitude of means and devices." United States v. Edwards, No. 22-10043-JWB, 2022 WL 2952550, at * 4 (D. Kan. July 26, 2022); see Galvan, No. 3:20-cr-00019, 2020 WL 4604502, at *6 (holding that even if the court were able to restrict his access to the internet, "a feat which many courts have noted is a near impossibility given the internet's ubiquitous presence," Defendant may still find access to child pornography); United States v. Ybarra, No. 21-10061-JWB, 2021 WL 3849470, at *4 (D. Kan. Aug. 27, 2021) ("Access to the internet is gained not only from a home computer, but also from public computers and hand-held devices which are readily available and easily concealed."). Nor would GPS monitoring help reasonably assure the safety of the community in this instance, as Defendant is accused of committing the charged offenses from the comfort of his own home. Defendant possessed multiple devices and hard drives; thus, it would not be difficult for him to obtain another device to further his addiction.

Thus, there are no conditions or set of conditions that would reasonably assure the safety to any other person or the community.

### Part III - Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of any attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

DATED this 8th day of September, 2022.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge
