```
 1                  UNITED STATES DISTRICT COURT

 2                   DISTRICT OF SOUTH DAKOTA

 3                        WESTERN DIVISION
      * * * * * * * * * * * * * * * *   * * * * * * * * * *
 4    UNITED STATES OF AMERICA,         * CR No.  22-50141
                          Plaintiff,    *
 5                                      * SENTENCING HEARING
         vs.                            *
 6                                      * AUGUST 14, 2023
      GARY HECKEL,                      *
 7                        Defendant.    *
      * * * * * * * * * * * * * * * *   * * * * * * * * * *

 8

 9           PUBLIC TRANSCRIPT OF SENTENCING HEARING

10          BEFORE THE HONORABLE JEFFREY L. VIKEN,

11               U.S. DISTRICT COURT JUDGE

12    (PURSUANT TO CRIMINAL LOCAL RULE 57.10, PORTIONS OF ALL

13   CHANGE OF PLEA AND SENTENCING TRANSCRIPTS ARE RESTRICTED)

14    APPEARANCES:

15    FOR THE PLAINTIFF:   SARAH B. COLLINS
                           U.S. ATTORNEY'S OFFICE
16                         515 Ninth Street, #201
                           Rapid City, SD, 57701
17                         (605) 342-7822
                           sarah.b.collins@usdoj.gov
18
      FOR THE DEFENDANT:   ELLIE BASTIAN
19                         Federal Public Defender Office
                           655 Omaha Street, Suite 100
20                         Rapid City, SD, 57701
                           605-343-1498
21                         ellie.bastian@fd.org

22    COURT REPORTER:      SHERI L. NOT HELP HIM, RPR, CRR
                           Official Court Reporter
23                         550 Ninth Street, #302
                           Rapid City, South Dakota 57701
24                         Phone: (605) 399-6007.
                           Sheri_Nothelphim@sdd.uscourts.gov
25
```

| | |
|---|---|
| 1 | PROCEEDINGS ~ August 14, 2023 |
| 2 | Before Hon. JEFFREY L. VIKEN, Judge |
| 3 | |
| 4 | (Proceedings in open court at 1:31 p.m.) |
| 5 | THE COURT:  This is the time set for sentencing |
| 6 | in the case of United States versus Gary Heckel, our file |
| 7 | 22-50141. |
| 8 | May I have the appearance of government counsel, |
| 9 | please? |
| 10 | MS. COLLINS:  Sarah Collins on behalf of the |
| 11 | United States. |
| 12 | THE COURT:  Good afternoon. |
| 13 | Defense? |
| 14 | MS. BASTIAN:  Ellie Bastian with Mr. Heckel. |
| 15 | THE COURT:  Good afternoon, Mr. Heckel. |
| 16 | THE DEFENDANT:  Good afternoon. |
| 17 | THE COURT:  I know Ms. Michelle Macrander |
| 18 | prepared your presentence report.  Ms. Shirley L'Esperance |
| 19 | is a very experienced in U.S. Probation and is covering |
| 20 | this hearing for Ms. Macrander. |
| 21 | Have you had enough time to work with |
| 22 | Ms. Bastian to prepare for sentencing? |
| 23 | THE DEFENDANT:  Yes, sir. |
| 24 | THE COURT:  All right.  As we go along now, if |
| 25 | you wish to confer with your lawyer, just let me know |

1    that.  We'll take a break.  Okay?

2              THE DEFENDANT:  Okay.  Thank you.

3              THE COURT:  Sure.

4              Let me list for everyone the materials I studied

5    in preparation for sentencing today.

6              You're before the Court, Mr. Heckel, on a plea

7    of guilty to count one of an indictment.  You pled guilty

8    to receipt of child pornography.  Congress set a mandatory

9    minimum of five years in federal prison for that charge,

10   up to 20 years in federal prison.

11             The United States and the defense are free to

12   argue for any sentence within statutory limits in your

13   case, and you've agreed to restitution under the

14   appropriate statute.

15             There's also extensive forfeiture of some of

16   your property involved in this offense in paragraph L of

17   the plea agreement.

18             I did carefully review the presentence

19   investigation report.  I read it a number of times.

20             No United States' objections, Ms. Collins?

21             MS. COLLINS:  That's correct.

22             THE COURT:  Ms. Bastian, no defense objections?

23             MS. BASTIAN:  Correct.

24             THE COURT:  All right.  Now, I should tell you,

25   Mr. Heckel, that I'm in the group of federal judges who

1    believe we should not be sentencing people in child

2    pornography cases without at least sampling the images,

3    because the law enforcement description which comes

4    through in the presentence report is sometimes not fully

5    accurate in terms of what we're seeing.  Sometimes the

6    content is lesser than the words describe.  Sometimes it's

7    more severe.

8         In this case it was very helpful, because the

9    sample of images provided to me were divided into sections

10   based on the enhancements for specific offense

11   characteristics in the guidelines.  So I, of course,

12   didn't look at the massive number of images, but I did get

13   an accurate review of each of the categories that would

14   increase your sentence under the guideline system.

15        Now, there is a motion Ms. Bastian made on your

16   behalf for a downward variance below the federal

17   sentencing guideline range.  We'll speak more about the

18   guidelines, and I'll listen to any motion practice.  It's

19   docket entry 57, Ms. Bastian's filing.  She's asking for a

20   ten-year custody sentence in your case.  And including a

21   report from Dr. Aiken, who did a -- basically a

22   psychosexual evaluation and says you're a relatively

23   low-risk person, subject to therapy for the issues that

24   brought you into or that you chose to go into the viewing

25   of this type of child pornography.

1          There were support letters.  You have family;

2     very supportive.  I understand your ex-wife Linda is still

3     supportive of you.  Edward Heckel, your brother, said

4     you've always been a hardworking, generous, and loyal

5     person.  He's asking me to consider your age, which is 71,

6     along with leniency to fashion a proper sentence for you.

7          Your son Kevin wrote on your behalf, said you

8     raised two fine sons and encouraged him to go to college,

9     helped pay for his college.  He said you were really a

10    good father and a great grandfather.

11         You wrote a letter.  I respect your writing

12    under these circumstances.  It's not easy to take in and

13    plead guilty to the offense you've committed.  You do take

14    full responsibility.  Although your behavior, incredibly

15    stupid, it's also incredibly criminal.  And I'm sure

16    that's just right.  It's cost you your family.  About

17    everything in life that had any meaning to you is gone

18    now.  You had been a good community member.  I have no

19    doubt of that.

20         You're hoping for a lenient sentence because of

21    age and health.  And, as I see quite often, you took on

22    now some work at the Pennington County Jail here of a

23    spiritual nature with a study group that you've taken on.

24         Your letter is clear.  You say, quote, that you

25    "are part of the internet child pornography problem."  I

```
1   agree with you.  I mean that's the truth.  If there wasn't
2   receipt and sharing of links -- your letter itself made it
3   very clear there wouldn't be this kind of child
4   pornography out there if men weren't viewing it and
5   sharing it.  And you're absolutely right.  I have no idea
6   whether there's any end in sight to this kind of criminal
7   behavior, but it's something we'll talk about more here.
8           And you accept the need for punishment in the
9   case, which is obvious when there's a mandatory minimum
10  and a two-year maximum Congress took this crime extremely
11  seriously.
12          So, any additional materials submitted for my
13  review, Ms. Collins?
14          MS. COLLINS:  No, Your Honor.
15          THE COURT:  Ms. Bastian?
16          MS. BASTIAN:  No, Your Honor.
17          THE COURT:  Well, these federal sentencing
18  guidelines are advisory only, Mr. Heckel.  They were
19  devised by Congress in an effort to create uniformity in
20  federal sentencing.  That was a concept where a person
21  would take criminal history as calculated by the
22  guidelines, the offense of conviction and various specific
23  offense characteristics or enhancements under the
24  guideline system to arrive at a total offense level;
25  which, when compared with criminal history, produces a
```

1    range of months of imprisonment that every federal judge

2    has to consider at sentencing.

3           We are not bound to follow the guideline range

4    of months of imprisonment, but we are required to

5    accurately calculate it, even without objections, and then

6    consider it.  So we'll be working through all that

7    together.

8           Did you have an opportunity to discuss with

9    Ms. Bastian the federal sentencing guidelines and how they

10   apply to your case?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  All right.  Well, let's take up the

13   presentence report and put the guideline calculation on

14   the record so that if ever there's a reviewing court that

15   needs to determine if an error was made in the

16   calculation, you'll have a full record for that,

17   Mr. Heckel.

18            Page 9 of the presentence report is the

19   beginning of the guideline calculation.  You pled guilty

20   to count one, receipt of child pornography.  That has a

21   starting point or base offense level of 22.  Every federal

22   felony is assigned a numerical starting point, which is

23   called the base offense level.

24            Two levels are added because prepubescent

25   minors, or minors under the age of 12 years, were involved

1    in images.  They most certainly were a large number of

2    children under 12.  A lot of infants involved in this

3    case.

4            Specific offense characteristic, that you

5    distributed links to child pornography in exchange for

6    other images, which is exactly what builds, you know, the

7    market for the collection and possession and distribution

8    of child pornography.  Aggravating factor adding five

9    levels.

10           Four levels are added because of the nature of

11   some of the images.  There were videos of children, some

12   of them were as young as infants, and they were subject to

13   violent sexual acts, bestiality, torture, bondage.

14   There's no question that those images were here.  So four

15   levels are added as an aggravating factor.

16           Paragraph 22 I'll discuss later, because I'm

17   going to remove the two levels by variance based on a

18   policy disagreement I have with the guideline calculation.

19   But right now the two levels that are added in paragraph

20   22 for the use of computer are accurately part of the

21   calculation.

22           Paragraph 23, it's an aggravating factor for the

23   number of images here.  If it's more than six images, five

24   levels are increased.  There were actually thousands of

25   images.  And the way the guidelines count images, 75

1    images for every video, there are 3.5 million plus images

2    of child pornography for guideline purposes.

3            That gives us an adjusted offense level of 40.

4            Two-level reduction in your favor for accepting

5    responsibility, which you've certainly done.  And the

6    United States requested a third-level reduction in your

7    favor for avoiding the use of prosecution and court

8    resources at a jury trial.

9            So the total offense level is 37.

10           Criminal history figures in.  In some cases it's

11   a real driving factor for the length of recommended

12   imprisonment.  In your case, if you see paragraph 34, you

13   have no history of any kind criminally, so you're in the

14   most favorable sentencing category, criminal history

15   Category I on the sentencing table.

16           Page 14, paragraph 55, has the guideline

17   calculation.  Based on a total offense level of 37 and a

18   criminal history Category of I, the guideline range for

19   imprisonment is 210 months to 240 months in federal

20   prison.  The upper end of the guidelines actually would be

21   262 months, but it's capped by the statutory maximum of 20

22   years, 240 months.  In plain language that's a guideline

23   range of 17 and a half years at the low end, 20 years at

24   the high end.

25           No parole in the federal system.  Supervised

1    release.  Congress requires five years of supervised

2    release up to life on supervision after custody for this

3    offense type.  The guideline range is the same, five years

4    to life.  And I will set the special conditions of your

5    supervision in this sentencing today.

6         Because of the mandatory minimum, of course,

7    there's no probation eligibility.

8         Every federal felony sentencing requires for

9    each count of conviction a $100 special assessment.  That

10   money goes into a National Crime Victim's Assistance Fund,

11   which is why it's nationally mandatory.  It's due today.

12   If you can't pay it, then I'll waive the interest

13   requirement on the special assessment so you can pay it

14   over the course of your judgment in the case.

15        There is, and you've agreed to, restitution.

16   It's the Amy, Vickie, and Andy Child Pornography Victim

17   Assistance Act of 2018.

18        I don't know if NCMEC has determined the

19   identity of images as this point, Ms. Collins?

20        MS. COLLINS:  We're still waiting, Your Honor.

21        THE COURT:  You want a 90-day extension?

22        MS. COLLINS:  Yes, please.

23        THE COURT:  That's what's done here when the

24   national center, which is capable of identifying, in many

25   instances, the children involved because they've been

1    exploited in other cases and their identity is known and

2    trust funds are set up for them.  So that's where the

3    restitution goes.  It's required by federal law.

4              So the guideline range for a fine is $40,000 to

5    $250,000.  There will be no fine here.  I'm much more

6    concerned that restitution be paid to identifiable victims

7    of your crime.

8              And then, as I said, there's forfeiture in

9    paragraph nine of the plea agreement.

10             Ms. Collins, is that an accurate statement of

11    the statutory and guideline factors for sentencing?

12             MS. COLLINS:  Yes, Your Honor.

13             THE COURT:  Do you agree, Ms. Bastian?

14             MS. BASTIAN:  Yes, Your Honor.

15             THE COURT:  So I am adopting the presentence

16    report as written.  Ms. L'Esperance, if you could thank

17    Ms. Macrander for the report.  I'm sure this was not an

18    easy report to prepare, but it's accurate.

19             So I will do this:  If you look at paragraph 22

20    on page 10, it's in the guideline calculations.  It's the

21    specific offense characteristic for the use of a computer

22    or interactive computer service for the commission of this

23    crime.  I am among a group, a large number of federal

24    judges, who consider that an antiquated guideline

25    provision.  These crimes are always committed with an

1    internet-capable device.

2            It adds two levels.  My policy disagreement

3    results in a downward variance to eliminate that

4    aggravating factor, because I don't think it's a

5    legitimate aggravating factor in the modern age.  So I'm

6    going to vary downward two levels on that basis to remove

7    the effect of use of a computer, which brings your total

8    offense level to 35.

9            You're a criminal history Category I.  The

10   guideline range becomes 168 months to 210 months in

11   federal custody, which at the low end is 14 years, and 17

12   and a half years of custody at the high end, which is the

13   range that anybody could expect to receive for

14   incarceration in a case of this type without a computer

15   enhancement.

16           So, Ms. Bastian, you've made a motion for a

17   downward variance.  I'd be pleased to hear from you.

18   Mr. Heckel, if you wish to speak, you have every right to

19   be heard today if you wish.

20           THE DEFENDANT:  Okay.

21           THE COURT:  Ms. Bastian?

22           MS. BASTIAN:  Thank you, Your Honor.  There are

23   two threads that have been present in this case from the

24   beginning, so I want to address those first.

25           The first thread is in comparison to -- from

1   Mr. Heckel to Xavier Moreno.  Xavier Moreno is someone who

2   was sentenced almost exactly a year ago in this Court,

3   also for child pornography.

4        The second thread has been an emphasis on a

5   particular video that features a dead child being raped.

6   So those are two points that I want to address and then

7   move forward.

8        Xavier Moreno was sentenced to 17 and a half

9   years in prison.  And I know this Court and the U.S.

10  Attorney's Office often use comparable cases to at least

11  consider where similar defendant have been sentenced in

12  this particular court, not just across the nation.

13       So I understand that Gary Heckel -- well, it's

14  my understanding, having spoken with the Internet Crimes

15  Against Children, Hollie Strand and the prosecutor's

16  office, that Gary Heckel's collection of child pornography

17  was probably larger than Xavier Moreno's.  He amassed a

18  lot of child pornography, Gary Heckel did.

19       THE COURT:  17,312 images on the Moreno case.

20       MS. BASTIAN:  17,000?

21       THE COURT.  Yeah, but if you add the guideline

22  method of calculating the videos, it's one million

23  eighty-eight, a thousand six hundred and twenty-five video

24  images.

25       MS. BASTIAN:  So per the guideline calculation,

1    it's a million compared to 3.5 million.  So we have quite

2    a bit more in Gary Heckel's case.

3            THE COURT:  Right.

4            MS. BASTIAN:  But beyond that, I don't think

5    these two men are similar.

6            Mr. Moreno was not represented by our office.

7    The only thing I know about him must comes from public

8    filings or new reports.  But Javier Moreno was in a

9    position of trust at the Salvation Army at a camp.

10           This is someone who had access to children and

11   also was in a position of trust with those children.  So

12   to me it seems like although -- although the numbers are

13   similar, and although both men were downloading in massive

14   quantities, is my understanding; batch downloads, getting

15   a lot of material, including a lot of material that ends

16   up with guideline enhancements because of the nature of

17   it, I think that these are very different cases.

18           As for the videos, this specific video, it's the

19   first one listed on -- in paragraph 12 in the presentence

20   report under examples of videos that are seen on these

21   devices, it's one minute, 19 seconds, and it's a horrific

22   video.

23           At the detention hearing the government called

24   Jesse Fagerland to testify about the existence of this

25   video, and it most certainly helped Judge Wollmann decide

1    whether to detain Mr. Heckel while this matter is pending.

2         At the detention hearing, prior to it when I

3    knew the nature of this video and that it would be

4    discussed at the hearing, I talked to Gary about it, and

5    he said, well, I've never seen that video, I have no idea

6    what you're talking about.

7         So on January 9th, as I normally do in a case

8    like this, I visited with Holli Strand at the Internet

9    Crimes Against Children office and confirmed that this

10   video does exist, which I had no doubt that it exists and

11   it was on one of his devices.  So I confirmed that.  And

12   then I asked, "Can you prove that Gary Heckel viewed this?

13   Can we see that this was something that he intentionally

14   watched?"

15        And as the Court probably knows, there are

16   different ways to see -- forensically, to see whether

17   someone's viewed a file.  Link files, which is L-N-K,

18   pronounced "link," that's one way to view, to determine as

19   a computer analyst whether something has been viewed.

20   Although there are no link files associated with this

21   video.

22        The one caveat, which I should mention, is that

23   out of all these devices, item number 20 was the

24   Hewlett-Packard desktop.  There were images flagged of

25   child pornography on that desktop, but the drive couldn't

1    be successfully imaged.  So the argument is we don't have

2    any proof that he saw this particular video, but we also

3    don't know that if we had access to the desktop computer,

4    that there could have been proof.

5          Well, I understand that ICAC can select any

6    videos that they want from the collection to have the

7    Court review.  And I understand that the Court wants a

8    cross-section from these different categories and that

9    they can provide the cross-section.  And these videos all

10   came from Mr. Heckel's devices.

11         But I did confirm with Ms. Strand last week that

12   this dead child video was among the videos sent to the

13   Court.  And she confirmed that.  And this is sensible.  If

14   there's any video that has become a point of contention,

15   that there's any -- that it just becomes sort of pivotal

16   to the case in some way that it should be included on this

17   list.

18         Again, that's sensible enough.  But in this case

19   it's concerning to me that out of all these images that we

20   have off of Gary Heckel's devices, out of all the images

21   on all the videos, this is one that we have absolutely no

22   proof that he even viewed.  And I don't know specifically

23   how many of those videos and images that are subject to

24   the enhancements he did view and didn't view.

25         But I know that according to the ECU report,

1    these enhancements -- which would be BDSM, infants,

2    bestiality, torture, things like that -- they were found

3    on three items:  Item number 3, item number 8, item number

4    13.  And the total is right around 2,214 either images or

5    videos.  That's not the guideline calculation, it's just

6    the number of them.

7         And you compare this number, 2,214, to the total

8    number of images and videos on his devices -- which if you

9    don't take the guideline way of calculating that, if you

10   just take the numbers -- we're looking at over 132,000

11   images and videos, of which I'm not sure how many are

12   duplicates or if that's a number without duplicates.

13   There could be duplicates in there.

14        So out of 132,000 plus, we have 2,000 some that

15   are actually the worst, worst material that is in his

16   collection, which is not to minimize the fact that those

17   exist and the fact that these are probably some of the

18   worst videos that the Court has ever seen.  It's the worst

19   video I've seen.  It's probably the worst video that a lot

20   of people in this room who have had to watch it have seen.

21   But that it's not fully representative of the material on

22   his devices.

23        So to the extent that that matters, that it

24   should make a difference in this sentence, that it's

25   Gary's contention he's not looking for this.  This is

1    stuff that came in while he's doing these reckless,

2    criminal batch downloads.  He goes onto a Russian website

3    where he's looking at photos and he's commenting on photos

4    on this Russian website, and this man messages him back

5    and says do you want to receive some -- I can send you

6    links to more videos.  I can email you these batch links.

7    That's what he does, and all of a sudden he's getting lots

8    and lots of child pornography.  But it's not -- I just

9    want to be clear that this is not -- the worst videos in

10   this are not what he was seeking out.

11          THE COURT:  Well, he didn't plead guilty -- he's

12   not convicted of viewing the videos.  He's convicted of

13   receiving them.  And his own letter says that he knows

14   he's part of the reason that this type of imagery is

15   shared among people with this sex offense behavior.

16   That's the reason the market exists for it.  That's why

17   people trade, which he did.

18          So I hear you.  I would say in this case it was

19   extremely helpful that Ms. Strand divided the sample of

20   images into the particular paragraphs of the guideline

21   calculation for which they were enhancements or specific

22   offense characteristics so I could determine whether his

23   receipt of these images was, in fact, titled to the

24   guideline calculation.  And my belief is it was, though

25   I'm perfectly willing to consider your argument further.

 1          MS. BASTIAN:  And maybe I should be clear.  I

 2   don't -- there's no question he received all of this.  And

 3   there's no question he was intentionally receiving all of

 4   this.

 5          THE COURT:  Right.

 6          MS. BASTIAN:  It's just a matter of -- in

 7   Dr. Aiken's report, as he discussed with her, he has a

 8   specific interest; he has a criminal interest in boys.

 9   And he has an interest in boys who are between the ages of

10   10 and 12.

11          THE COURT:  Yeah, it's hebephilia.  Right.

12          MS. BASTIAN:  So I'm only mentioning it to the

13   extent that is all mitigating; that not all this material

14   was specifically searched for and intentionally added.

15          So it's -- I understand I'm weaving a line

16   that --

17          THE COURT:  Right.

18          MS. BASTIAN:  -- almost makes it sound as if I'm

19   trying to absolve Mr. Heckel of his guilt.  But for what

20   it's worth, that's the percentage of the material that was

21   the most awful images.

22          THE COURT:  Did you review images beyond just

23   the ones connected with the guideline calculations?

24          MS. BASTIAN:  I reviewed a number of images with

25   Ms. Strand, and then we had our own computer expert Dan

1    Meinke review them, and I went to their office and looked

2    at them.

3            THE COURT:  So you looked at a few thousand

4    images?

5            MS. BASTIAN:  Probably.

6            THE COURT:  Okay.

7            MS. BASTIAN:  So all this leads to what is an

8    appropriate punishment between five and 20 years.  And

9    it's not a five-year case.  That's easy.  But how much

10   time does someone need to search in order to adequately

11   punish this behavior, particularly when you guys know

12   criminal history and when Dr. Aiken -- and Dr. Aiken's

13   good at writing these reports, or at least we found her

14   very useful, and she doesn't always write a favorable

15   report for us.  There are a lot of people we come across

16   that's fairly concerning when we receive the report back

17   from Dr. Aiken.

18           And it wasn't the case from Mr. Heckel.  He's

19   someone who can be rehabilitated, it appears.  He's

20   someone who would like to work with a counselor; who, as

21   she said, would be relatively easy for a counselor to work

22   for because he's a pleasant man and he has some insight

23   into his issues.

24           The other question is, for Gary the question has

25   been from the beginning, and this I wrote in my motion for

1    downward variance, how -- what percentage of the rest of

2    his life, what portion of it should be spent in prison?

3    Which, again, that might not be the way to look at this.

4    Maybe it's just a matter of how much punishment is

5    adequate.  But for him, if he receives a ten-year sentence

6    or something below ten years, that might be 30 percent of

7    the time of his life.  And what he wants is to be able to

8    look forward to doing something once he -- outside of

9    prison walls while he's still alive.

10          As the Court noted, he's lost nearly everything

11    through this.  He lost his marriage.  He lost his house.

12    All the money that he would have saved up for retirement

13    is now gone through the divorce.  So he'll emerge from

14    jail, if he does emerge, as a pauper who will be dependent

15    on the government.

16          So his outlook isn't real bright, other than he

17    would still like to do something good for others.

18          So our request is a ten-year-or-under sentence

19    in this case.  Thank you.

20          THE COURT:  Well, thank you, Ms. Bastian.

21    It's -- these are difficult cases to defend.  And they

22    depend on their individual circumstances.  And here, of

23    course, the individual circumstances I think are something

24    with which those of us involved in the case are very

25    familiar.

1           It is a question of what is appropriate

2    punishment considering the guidelines and the statutory

3    factors for sentencing.  So I appreciate your

4    presentation.

5           Now, Mr. Heckel, do you wish to speak today?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  You take all the time you need.

8    This is about as difficult a day as you'll have for

9    speaking.

10          THE DEFENDANT:  Well, as I stated in my letter

11   to you, I found that this was an incredibly stupid and

12   irresponsible fact of my life.  I have never done anything

13   like this.  I have never been in trouble with the law.

14   But more importantly, I have never even thought of child

15   pornography.  And even in this case, I did not look for

16   it.  It kind of sort of found me.

17          However, I have to admit responsibility that I

18   received it and I downloaded it.  I have no denial.

19          And the victims here are the kids that are part

20   of these pictures and videos, because they no longer had a

21   childhood.  It was robbed from them.  And the only way

22   that we could prevent something like this in the future is

23   by trying to retain these people who do indulge in the

24   child pornography trade.  And I agree with you; I don't

25   know if it will ever be wiped out.  But I think we've got

1    to try to do something to minimize it.

2              And in my case now, as I said, I accept full

3    responsibility.  And as you know, I have lost everything,

4    which is kind of hard.  I'm 71.  In three days I'll be 72.

5    And this is not how I planned spending my retirement.  But

6    this is what's going to happen.

7              And I'm very proud and grateful for a couple

8    people who will still support me, with my sons, my

9    brother, and even to a point my ex-wife.  But I've lost

10    mostly all the other family and all my friends.

11              So I know I have to be punished.  I'm accepting

12    that.  I will try to do as good as I can in person.  I

13    would like to take classes.  I would like to learn a

14    language, even at my age, additional languages.  And

15    should I come out of my sentence still alive, I would like

16    to get involved with volunteer work, because I'll probably

17    be too old to work.  But you never know.

18              But I would like to volunteer my time to

19    animals, which I have always loved, and possibly to the

20    church and the hospital.  I would like to give something

21    back to society because of my ridiculous actions in this

22    case; not only what it's cost me, but what it's cost

23    everybody here.  Nobody had to be here for this trial or

24    for this sentencing.  So it's cost the taxpayer a lot of

25    money, too.  So there's no winners here, only losers.

1          And I just -- I just ask for consideration, for

2     leniency, because I feel I am a good person, and I know I

3     would never do anything like this again.  This was a

4     one-and-done situation.  Thank you.

5          THE COURT:  Well, thank you, Mr. Heckel.

6          Now, you also, of course, distributed links to

7     others in exchange for more pornography, if this is an

8     accurate presentence report.

9          THE DEFENDANT:  Yes, I did, Your Honor.

10          THE COURT:  That's how the industry keeps going.

11          THE DEFENDANT:  Yep.

12          THE COURT:  And your letter has some insights.

13     And one of the sentences that struck me, you wrote, quote,

14     "I could never imagine my grandchildren being exploited

15     like this."  And, well that's normal human thinking.

16     You'd never even imagine that one of your own

17     grandchildren would be exploited like this.

18          So many of these images were toddlers, and so

19     many of them were prepubescent males, a few of them

20     engaging in what appear to be voluntary sex acts by kids

21     who are too young to volunteer for such things because

22     they don't understand the ramifications.

23          But the vast majority of what I saw, these are

24     the rapes of toddlers and young people in violent ways.

25          They are somebody's grandchildren.  They are

1    somebody's children.  And your grandchildren, I'm sure the

2    stability of the sons that you raised, your grandchildren

3    have lives which will never be affected by such

4    exploitation.

5           We know from the many cases we've had and the

6    study when it was done about this defense type which came

7    to the federal system with the internet, primarily, we

8    have a lot of suicides of kids once they realize that

9    those images will never come back.  They cannot ever be

10   removed from the internet universe.  A lot of people get

11   therapy, some of them at a usage age.  That's what these

12   restitution amounts go to, individually into trusts for

13   these kids who are going to need some of them, if they can

14   ever overcome their exploitation, really long-term therapy

15   assistance.  Some of them are nonfunctional kids who

16   become nonfunctional adults.

17          Everywhere you look in a case with this level of

18   violence, bondage, torture, bestiality, even a homicide,

19   it is something that nobody's grandchildren or children

20   should ever experience.  It's --

21          The gravity of your crime is real.  It is,

22   really, for me -- those of us who have to look at these

23   images in order to properly understand the case -- among

24   the two or three most severe and egregious group of images

25   that I've ever seen.  And I can't imagine how many

1    thousands of images I've sampled over the years.  But

2    these are among the most egregious.

3         And the violence, I can say to you, over the

4    last year at least the violence in child pornography

5    imagery has increased.  The bondage, the nature of the

6    rapes, the torture.  It is -- it's really disturbing

7    beyond words.  And that's what Congress is trying to deal

8    with here and society is trying to copy.

9         Fortunately very few people are exposed to this

10   type of material, but it is on the increase.  I accept the

11   sincerity of your guilt.

12        So I have to turn to a consideration of your

13   position with Ms. Bastian and now Ms. Collins's position

14   for the prosecution case.

15        Is there anything else you want me to think

16   about in fashioning a sentence?  I don't decide what

17   sentences should be, Mr. Heckel, before I come in here.

18        THE DEFENDANT:  The only thing I can add, Your

19   Honor, is that in all honesty, I never saw a lot of these

20   videos and pictures.  When the links came over, I would

21   open them and then usually you have thumbnail pictures of

22   what is in that link.  And it wasn't what I wanted to see

23   or was interested in seeing.  I didn't look at them.  I

24   never opened them.  I don't think I viewed 25, 30 percent

25   of the images that were there.

1          One was the time constraint.  This was hoping

2    over a period of a few months.  I wouldn't have time to

3    look at all the images.  And the second thing is it did

4    pique my interest.  It was something I'd never seen.  And

5    it did interest me a little bit -- but not the bestiality

6    and torture, and that.  I never saw that and I wouldn't

7    want to see that.  And I feel bad for people that did have

8    to view them.  Nobody should have to see something like

9    that, and certainly kids should not have to go through

10   that.

11         THE COURT:  Well, I respect your speaking today.

12   Thank you.  You're a human being, entitled to human

13   dignity, and nobody's trying to take that from you today.

14   We are trying to deal with a proper sentence for the crime

15   you committed.

16         THE DEFENDANT:  Thank you, Your Honor.

17         THE COURT:  Thank you.

18         Any additional thoughts, Ms. Bastian?

19         MS. BASTIAN:  No, thank you.

20         THE COURT:  Ms. Collins?

21         MS. COLLINS:  On behalf of the 2000 plus

22   children that were victimized in the -- what Ms. Bastian

23   called the worst of these, I take umbrage with the fact

24   that she seems to think that that's a low number.  It's

25   offensive.  That concept is offensive.

 1          It is also nonsensical, the phrase one-and-done.

 2   You don't get a collection like he had by doing this a few

 3   times.  You don't happen upon images of child pornography.

 4   He was looking for these images.  He received them.  He

 5   viewed them, and he enjoyed them.

 6          Your Honor, this is, like the Court said, one of

 7   the top -- in my assessment, top two worst child

 8   pornography cases.  And I handled the Moreno case.  I know

 9   it well.  And the Court was correct in its assessment of

10   the numbers.  It was about a third of the number that

11   Mr. Heckel had.  And Mr. Moreno deserved every single day

12   of the 17.5 years that this Court gave him.

13          It wasn't just because he had access to children

14   through the Salvation Army.  Certainly that was one of the

15   aggravating factors.  But this Court was more offended by

16   the number and the nature.  And that's exactly what we had

17   here, plus more.

18          The United States is asking for a 20-year

19   sentence; that was in the original guideline range.  It

20   was actually -- I think the top end would have been 262.

21          This Court needs to punish, for many reasons:

22   Number one, the fact that there was well over a hundred

23   thousand images just in themselves that Mr. Heckel, again,

24   sought out, collected, enjoyed, distributed to other

25   individuals to do the same thing, to further exploit.

1          I think it's important to know what this Court

2     previously said about suicides.  We actually had two

3     children this summer commit suicide from two very well

4     known collections that I guarantee this Court has probably

5     seen 20 times, because I've seen them that many times.

6     They killed themselves this summer because of people like

7     him.  And that can't be forgotten.

8          130,000 actual images and videos.  The nature of

9     these images and videos, like I previously said, were some

10    of the worst I've ever seen.  It's frankly amazing that

11    all of us aren't in therapy because of him, because they

12    were so bad.  And frankly, it's amazing that this Court

13    doesn't need assistance, after having viewed the things

14    that he found sexually attractive.

15         Little kids being absolutely tortured.  I don't

16    even know how any of them had a childhood after what was

17    done to them.  Video'd and then enjoyed by people like

18    him.  He deserves every day of a 20-year sentence for the

19    number and nature.

20         And this Court can upward vary.  I understand

21    you already downward varied for the computer, which I

22    understand.  However, it doesn't address the seriousness

23    of what Mr. Heckel actually did and what he had.  It comes

24    nowhere near addressing all of that.  And so the United

25    States is asking for the Court to upward vary to account

1    for the actual seriousness of his offense in comparison to

2    the other people.

3            This Court has seen cases where somebody is

4    prosecuted for the same crime where they only have 30

5    images, 40 images, 150 images.  And should they be

6    prosecuted?  Absolutely.  100 percent they should.  But

7    when compared to him, they are nowhere near the level of

8    depravity that he showed to those poor children; again,

9    enjoying them, downloading, distributing so other people

10   could do the same thing that he does.

11           I understand he's an older man, but he deserves

12   it anyway.

13           Your Honor, I am asking for 20 years.  Thank

14   you.

15           THE COURT:  Well, thank you, Ms. Collins.

16   That's why the plea agreement was so Ms. Bastian and you

17   could ask for any sentence within statutory limits.

18           So I understand the recommendation.

19           There are many case types, crime times that we

20   deal with where people age out -- violent crime, for

21   example.  As people age, it becomes less likely, both

22   statistically and real experience over the many years I've

23   been here, that the violence slows down.  The gang

24   membership slows down.  The drug distribution slows down.

25           This charge is not one of those types, in my

1    observations.  That is, people older than you engage in

2    the receipt or possession and distribution of pornographic

3    images of children.  The content of the images in child

4    pornography cases in this country covers a very wide

5    range.  Some of it one would, by comparison but not in

6    reality, consider somewhat mild.  And then it sort of

7    escalates from that point.  And as I mentioned, it's

8    escalating from these years to the point where the

9    violence is becoming extremely common.  And most of his

10   large collections have violent images, but only one or two

11   ever approaching the level of violence in those images.

12         Whether you saw them or not, that's not the

13   crime.  It's possession, and then in your instance, also

14   distributing to others by trade these images.  So whether

15   you looked at them or not or someone else looked at them

16   or not, it doesn't change the reality that the children

17   involved here, most of whom were very young -- I really

18   didn't see any -- you know, adolescents or older teens

19   involved in these images on any regular basis.  It really

20   was extremely young children:  Toddlers with other

21   underaged people committing sex acts with them or on them,

22   or people who are adults doing so, which was the large

23   percentage of what I was able to view.

24         The number of images that, of course, has been a

25   driving factor in the guidelines because it's an

1    aggravating factor when there are more images.  But that

2    also tells us the reality that the larger number of

3    images:  The more children who are exploited and damaged

4    by the production of this material.  And some of them

5    repeatedly ending up in a life where they have become --

6    really, they're just chats.  They're just property,

7    they're just prompts.  They're just sex toys.  And clearly

8    some of the kids in these had got to that point.  There

9    isn't even a reaction on the part of some of these kids

10   who are 10 or 12 or 13 years old.  Not even a reaction to

11   anal rape or being forced to perform sex acts on an adult.

12          It's exactly what everyone who has any

13   sensibility at all would hope would never happen to

14   children.  Not yours.  Not anyone's.

15          So, we know what the guidelines say in this

16   case.  As I pointed out, the guideline range with --

17   including my policy disagreement with the guidelines, give

18   us a range of months of imprisonment of 14 years to 17 and

19   a half years.  That's the guideline range.

20          The guidelines are not binding.  The binding

21   nature of them was struck in 2005, wisely, by the Supreme

22   Court, and Congress put in place discretionary sentencing

23   statute.

24          Now those of us who grew up under discretionary

25   sentencing, I've been practicing in this courtroom for

1    various forms for 46 years, starting as a 24-year-old who

2    thought I knew everything, prosecuting, and a slightly

3    older person who knew a bit more defending.

4         But this is just a -- this is an intolerant

5    development in American society, which Congress has

6    criminalized.

7         So, I have to fashion enough of a sentence but

8    not a sentence greater than necessary under 18 United

9    States Code Section 3553(a), the variant statute, which

10   Ms. Bastian is adeptly using to request a ten-year

11   downward variance for a sentence, and Ms. Collins is using

12   with the support of her advocacy and the facts of the case

13   for an upward variance, above the federal sentencing

14   guideline range to the maximum of 20 years.

15        So, properly done in every case, a federal judge

16   will balance the factors.  Congress set out a list of

17   factors in 3553(a).  They constitute the purposes of

18   federal sentencing.  And because of their importance, each

19   one of them should be weighed in each case.

20        And unlike the guidelines, which is just a

21   standard, cookie-cutter approach, everyone with this

22   criminal offense of conviction gets something within this

23   sentencing range, this is individualized sentencing so

24   that the sentence can fit the criminal that nature of the

25   behavior being sentenced, it can address the needs of

1    society, and it can address the individual characteristics

2    and life of the person being sentenced.

3              So those factors are as follows:

4              First, I have to consider the seriousness of the

5    offense.  Of course this record makes it clear that I

6    consider this among the most serious child pornography

7    offenses and receipt of child pornography offenses that

8    I've experienced in the 14 years I've been here.

9              The need for punishment.  Well, Congress has a

10   separate law saying prison is punishment in the federal

11   system; it's not rehabilitation.  There may be programs

12   that you can seek out, Mr. Heckel, while you're in

13   custody.  But prison is not designed for rehabilitation.

14   It's designed to punish the individual for the crime

15   committed.

16             Congress also says the punishment, the

17   imprisonment, is to protect the society from future crimes

18   by that person.  I think after this experience in your

19   life at your point there's going to be virtually no

20   likelihood you'll ever repeat this kind of criminal

21   behavior.  You say that in your letter.  I accept it as

22   the reality, given the age factors and the obvious length

23   of sentence in this case.

24             I do have to consider your personal history and

25   characteristics.  I'd like to tell you that it's very

1    unusual that somebody who comes in with this offense of

2    conviction and these types of images would have a criminal

3    history of doing so or having sexual contact with

4    children.  Just the opposite is true.  Very often people

5    who have led successful lives, men who have had

6    businesses, raised families, been contributors to their

7    community -- all of which is true for you, no criminal

8    history of any kind -- that is more likely the typical

9    background of the people who are here to be sentenced on

10   this offense type or on this possession of child

11   pornography.

12        Because this is a crime that comes out of a

13   person for reasons that are not fully understood.  This is

14   a psychiatric or psychological component to the criminal

15   behavior.  Criminal, nonetheless.  It's so intentional,

16   with repeated downloads and repeated efforts to share

17   links, these are not accidents.  They're not the result of

18   a disabling mental illness.

19        Here, unlike some cases, there's no excessive

20   alcohol use.  There's no drug involvement.  You're a clean

21   and sober man.  And so these are acts of intent and not

22   accidental.

23        So the manner in which the crime is committed is

24   a factor.  I've just described to you how that must be

25   viewed from my perspective.

1          So respect for the law.  A sentence is supposed

2    to show respect for the law.  And Congress says, look,

3    federal sentences for serious crimes are to send a message

4    to the larger community that there's no tolerance in the

5    federal judicial system for serious criminal behavior that

6    impacts the community.  And I think certainly a sentence

7    here, whether it's guidelines or something else, can

8    satisfy that factor.

9          I've got to consider the federal sentencing

10   guidelines to avoid sentences that are too severe or too

11   lenient compared to others, so that they'd be unfair.  And

12   I do consider that.  I've considered the guidelines, but

13   I'm not bound to follow them.

14         And your needs for rehabilitation and treatment;

15   which, if you were 35 or 40 years old, that would be a

16   very weighty factor, or 50.  Or 60.  You're turning 72.

17   That's not in any way to give up on you, but it's to

18   recognize that between the custody time and the

19   opportunities for therapy thereafter, they may be quite

20   limited.

21         There will be federal resources when you come

22   out of custody.  Your needs will be reassessed.  I'm going

23   to set some special conditions of supervised release

24   because I'm going to impose, as I must, at least five

25   years of supervision after custody.  And we'll put the

 1    basic special conditions that will be part of your

 2    supervision sentence in place today.  But you'll be

 3    reassessed when you come out of custody to determine

 4    what's really appropriate for you in terms of therapy and

 5    treatment.  So we'll deal with those matters.

 6            So I think everyone involved in your case --

 7    it's a small number of people, and these presentence

 8    reports are totally confidential.  The images are totally

 9    confidential except to the Court, the attorneys, and

10    experts involved for the prosecution and defense.

11            Considering all the factors we've discussed, I

12    can't say to you, sir, that a 20-year prison sentence is

13    in any way out of line.  If Congress had put the maximum

14    at 30 years, there would be a legitimate argument.  But

15    that's an appropriate sentence, even given your age.

16            There's no joy in saying that.  You've lost

17    everything.  This is the lowest point in your life.

18    You're a human being; I understand that.  But I also

19    understand that these are real children.  And what was

20    done to them for your entertainment or satisfaction or

21    that of others to whom you distributed these links, that's

22    the source of the crime, and that's what Congress is

23    punishing.  Your involvement in it did indeed further the

24    exploitation of children and the manufacturing and

25    distribution of child pornography in an extreme nature.

1          So I'm granting the upward variance based on the

2     severity of the offense, the content of the images, the

3     number of images of children involved.  And, it's not an

4     unfair sentence compared to other similar cases.

5          But the guidelines in their original form,

6     without my policy disagreement, did indeed have the

7     20-year mandatory maximum -- the 20-year maximum sentence

8     as the guideline range.

9          So if you would please stand, Mr. Heckel, I'll

10    announce your sentence in this case.

11         Based on the Constitutional and statutory

12    authority vested in this Court, it is the judgment of the

13    Court that Gary Heckel is hereby committed to the custody

14    of the United States Bureau of Prisons to be incarcerated

15    for a term of 20 years.

16         Upon release from imprisonment, you are placed

17    on supervised release for five years.  You start your

18    supervision by reporting in person to the U.S. Probation

19    office in the district to which you are released within

20    72 hours of your release from custody.

21         The mandatory conditions of supervised release

22    in federal law are part of your sentence.  You must not

23    commit another federal, state, or local crime while on

24    federal supervision.  You, of course, cannot illegally

25    possess a controlled substance.  Because that hasn't been

1    an issue for you, I'm going to waive the mandatory
2    requirement that you submit to one drug test within
3    15 days of your release from custody and at least two drug
4    tests thereafter, because you're a low risk for the future
5    abuse of controlled substances.
6            With every federal felony sentencing you have to
7    cooperate with the collection of DNA.
8            There are standard conditions of supervised
9    release adopted by the federal judges in South Dakota.
10   You'll see them in writing in your judgment, and they'll
11   be explained to you again when you come out of custody on
12   to supervision.
13           You do have to comply with the Sex Offender
14   Registration and Notification Act as required by federal
15   law.  Failure to register is a federal felony, and it's
16   often prosecuted.  Any state in which you live,
17   Mr. Heckel, will have its own registration requirements
18   with which you will have to comply.
19           I mentioned the standard conditions.  The
20   special conditions of supervised release, there are only
21   four -- or five in this case that we identified, since
22   we're quite a ways from your release onto supervision.
23           One, you must not initiate, maintain, or
24   establish contact with any male or female child under the
25   age of 18 nor attempt to do so without written permission

1    in advance from the United States Probation office.

2            Secondly, if you're going to have any access to

3    a computer, you must participate in the probation office's

4    computer internet use and monitoring program and comply

5    with the provisions of that participation agreement used

6    in the District of South Dakota.  Participation in this

7    program is in lieu of having all access to a computer

8    denied.

9            As part of the program you must consent at the

10   direction of the probation office to having installed on

11   your computers at your expense any hardware or software

12   systems to monitor computer use or prevent access to

13   particular materials.

14           Third, you must submit your person, your

15   residence, your place of business, your vehicle, your

16   possessions, any tablets, smart phone, or by the time you

17   come out of custody any internet-capable device and the

18   passwords for those devices to search conducted by a

19   United States Probation officer who's searching without a

20   warrant if that officer has a reasonable suspicion that

21   you violated a condition of your supervised release.

22           Fourth, you must participated in sex offender

23   treatment as directed by the probation office.

24           And fifth, you must participate in a program

25   approved by and at the direction of the probation office

1     for behavioral cognitive training.  That's a criminal

2     thinking therapy program which is going to be carried out

3     during your supervision period.

4              Restitution is mandatory.  It will be applied.

5     I'm going to defer for 90 days the identification by the

6     United States of known children who are victims of your

7     crime so that restitution requests can be made by

8     Ms. Collins.  Ms. Bastian will receive that, discuss it

9     with you.  You can either agree to restitution or not.  If

10    you disagree with restitution, we could have a hearing

11    where the government has to prove that the named

12    individuals are entitled to restitution under the law.

13             There is, as I said, a special assessment in

14    every federal felony sentencing of $100 for the crime

15    victim's assistance fund.  I will waive the interest

16    requirement on it so you can pay that special assessment

17    over the course of your judgment.

18             It appears to me that the Justice for Victims of

19    Trafficking Act of 2015 doesn't apply in your case because

20    under paragraph 52 of the presentence report you're

21    indigent.

22             Ms. Collins?

23             MS. COLLINS:  I don't believe that indigency is

24    considered for that, but we are not seeking an assessment

25    under that particular statute.

1      THE COURT:  I think that statute is the one that

2  has indigency.

3      MS. COLLINS:  That's the $5,000 assessment, not

4  the assessment that can actually go to $17,000.  The

5  $2,000 -- sorry, I don't have the PSR in front of me.

6  Which assessment is the Court talking about?

7      THE COURT:  It's the Justice for Victims of

8  Trafficking Act of 2015 --

9      MS. COLLINS:  Yes.  That one indigency does

10  count.  It's the other assessments that are set forth in

11  paragraph 66 that it doesn't matter, but we are not

12  seeking those.

13      THE COURT:  I understand that.

14      But you are not subject to the Justice for

15  Victims of Trafficking Act of 2015 by virtue of indigency,

16  proven by paragraph 52 of the presentence report.

17      Now, I am going to order restitution or special

18  assessments under the Amy, Vickie, and Andy Child

19  Pornography Victim Assistance Act of 2018.  And those are

20  the amounts that Ms. Collins has 90 days within which to

21  identify individuals subject to exploitation in this case

22  so that we can have either an agreement or a discussion

23  about that special assessment.

24      Now, you shall forfeit your interest to the

25  United States in the property there, the instrumentalities

1    of the commission of this crime.  They're defined in

2    detail at paragraph L of the plea agreement.  And those

3    descriptions will be in your judgment as forfeited to the

4    United States.

5              Please be seated, Mr. Heckel.

6              THE DEFENDANT:  Thank you.

7              THE COURT:  Ms. Collins, is there any legal

8    reason why this sentence should not be imposed as

9    announced?

10             MS. COLLINS:  No, Your Honor.

11             THE COURT:  I won't ask you to agree,

12   Ms. Bastian.

13             MS. BASTIAN:  And Your Honor, I would put on the

14   record that we do object to the government's motion for

15   upward variance and object to the Court's application.

16             THE COURT:  Yes.  And that's noted.  The

17   sentence is twice as long as the defense recommendation.

18   This was not an upward departure which required me to give

19   notice under the Federal Rules of Criminal Procedure.

20   It's an upward variance.  The defense was on notice, of

21   course, from the point of the plea agreement onward that

22   the United States was free to recommend any sentence

23   within the 20-year maximum.

24             So your appeal rights are preserved in this

25   matter.

 1          I can tell you this, as I must in every case,

 2    though you've given up most of your appeal rights in your

 3    plea agreement, Mr. Heckel, if you wish to challenge this

 4    sentence in the United States Court of Appeals, if you

 5    wish to challenge the bases for the upward variance, tell

 6    Ms. Bastian you wish to appeal so she can file the papers

 7    to protect your appeal rights on those appealable matters.

 8          I have to make certain on the record that you

 9    understand you have only 14 days from today's date within

10    which to appeal.  Do you understand that?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Is there a motion to dismiss count

13    two of the indictment?

14          MS. COLLINS:  Yes, Your Honor.

15          THE COURT:  And I'm granting Ms. Collins'

16    motion.  That's part of the arrangement you had in the

17    plea agreement.  Count two is dismissed.  You're free of

18    that charge.

19          Anything further, Ms. Collins?

20          MS. COLLINS:  No, Your Honor.

21          THE COURT:  Ms. Bastian?

22          MS. BASTIAN:  No, thank you.

23          THE COURT:  Well, counsel, this is an extremely

24    difficult case.  I appreciate your work on it.  And I wish

25    this is the last case that we'd see, counsel.  I think it

1    may not be the last, certainly not for judges in this

2    courtroom.

3              Court is adjourned.

4              THE LAW CLERK:  All rise, please.

5              (End of proceedings this date at 2:32 p.m.)

```
1
2                        COURT REPORTER'S CERTIFICATE
3
     UNITED STATES DISTRICT COURT  )
4    DISTRICT OF SOUTH DAKOTA      )      SS
     WESTERN DIVISION              )
5
6               I, Sheri L. Not Help Him, RPR, CRR, Official
7    Court Reporter in and for the United States District
8    Court, District of South Dakota,
9               DO HEREBY CERTIFY that I acted as such Court
10   Reporter at the Sentencing Hearing of the within-entitled
11   action, and that the foregoing public transcript, pages 1
12   to 45, inclusive, is a true and complete transcript of my
13   stenographic notes taken at said Sentencing Hearing on
14   August 14, 2023.
15              Dated at Rapid City, South Dakota, this 14th day
16   of September, 2023.
17              /s/ Sheri L. Not Help Him
                _____
18              SHERI L. NOT HELP HIM
                Official Court Reporter
19              515 Ninth Street #302
                Rapid City, SD  57701
20              Phone:  (605) 399-6007
                Email: Sheri_nothelphim@sdd.uscourts.gov
21
22
23
24
25
```